UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

STEVEN JEFFREY CYR and
LEANN MARY CYR,
        Appellants,

v.                                       No. SA:19-CV-0911-JKP

SNH NS MTG PROPERTIES 2 TRUST,
        Appellee.

## OPINION

Steven and Leann Cyr[1] appeal the order of the bankruptcy court sustaining SNH NS MTG Properties 2 Trust's ("SNH") objection to their claimed homestead exemption. After considering the arguments of counsel, heard November 19, 2020, the parties' briefs, the appellate record, and the applicable law, the Court reverses the order of the bankruptcy court sustaining SNH's objection.

**Background**

Debtor filed for bankruptcy protection on January 20, 2018, in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division. Debtor listed his property located at 15 Esquire, San Antonio, Texas as a homestead exemption on his bankruptcy schedules.[2] He noted that 15 Esquire is owned by the Cyrs' Living Trust, which is a "qualifying trust" under the Texas Property Code. SNH filed an objection to Debtor's homestead exemption, claiming that the Living Trust was not a "qualifying trust" under section 41.0021(a) of the Tex. Prop. Code. The bankruptcy court sustained the objection, concluding that the Cyrs' Living Trust does not constitute a "qualifying trust" under the Property Code.

---

[1] Collectively, "the Cyrs." Steven Cyr individually, "Debtor."

[2] Subject to exceptions, the homestead exemption protects the homestead of a family or of a single adult person from forced sale. Tex. Const. Art. XVI, § 50.

**Standard of Review**

Appellants do not challenge the Bankruptcy Court's findings of fact. District courts review questions of law from bankruptcy proceedings *de novo*. *Garcia v. United States*, 955 F.2d 16, 17 (5th Cir. 1992). Questions of statutory construction are reviewed *de novo*. *United States v. Gomez*, 960 F.3d 173, 177 (5th Cir. 2020). The determination of whether an exemption from the bankruptcy estate exists is reviewed *de novo*. *Hawk v. Engelhart (In re Hawk)*, 871 F.3d 287, 290 (5th Cir. 2017).

**Legal Principles**

Statutory interpretation begins with the plain meaning of the statute. *Caminetti v. United States*, 242 U.S. 470, 485 (1917). And generally, the "ordinary or natural meaning" should be applied when a term in a statute is not defined. *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). The Court is mindful that in construing a Texas statute, "a court may consider among other matters the: (1) object sought to be attained." Tex. Gov't Code § 311.023(1). Additionally, "homesteads are favorites of the law" and therefore, courts must liberally construe "constitutional and statutory provisions that protect homestead exemptions." *Bradley v. Pac. Sw. Bank, FSB (In re Bradley)*, 960 F.2d 502, 507 (5th Cir. 1992) (citation omitted); *see also Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). Even to the extent that doing so "might unwittingly assist a dishonest debtor in wrongfully defeating his creditor." *Id.* (citation omitted).

**Analysis**

As an initial matter, the Court notes that subsections 41.0021(a)(1)(A)-(C) of the Property Code are written in the disjunctive. Thus, only one subsection must be satisfied for a living trust to constitute a "qualifying trust." With respect to subsection 41.0021(a)(1)(C), the bankruptcy court concluded: "For a trust instrument to satisfy the No Cost Provision [subsection 41.0021(a)(1)(C)], the trust instrument must state that Debtor and LeAnn have the right to live at

15 Esquire 'at no cost.'" *In re Cyr*, 605 B.R. 784, 805 (Bankr. W.D. 2019). The "Homestead Rights Preserved" section of the Cyrs' Living Trust does not contain the phrase "at no cost." Instead, the phrase "rent free and without charge" is used. Consequently, the bankruptcy court concluded the trust instrument does not satisfy the requirements of a "qualifying trust" under the Property Code.[3] For the reasons below, this Court concludes that section 41.0021 of the Property Code does not require a trust instrument to include the phrase "at no cost" to constitute a "qualifying trust." The Court further concludes that the Cyrs' Living Trust satisfies the requirements of a "qualifying trust" under the Property Code.[4]

In pertinent part, the Property Code provides that a "qualifying trust" means an express trust:

> in which the instrument or court order creating the express trust provides that a settlor or beneficiary of the trust has the right to: use and occupy the residential property as the settlor's or beneficiary's principal residence at no cost to the settlor or beneficiary, other than payment of taxes and other costs and expenses specified in the instrument or court order.

Tex. Prop. Code § 41.0021(a)(1)(C). The Texas Tax Code, in pertinent part, provides that a "qualifying trust" means a trust:

> in which the agreement, will, or court order creating the trust, an instrument transferring property to the trust, or any other agreement that is binding on the trustee provides that the trustor of the trust or a beneficiary of the trust has the right to use and occupy as the trustor's or beneficiary's principal residence residential property rent free and without charge except for taxes and other costs and expenses specified in the instrument or court order.

Tex. Tax Code § 11.13(j)(3)(A).

---

[3] The parties do not dispute that the Cyrs' Living Trust satisfies the requirements of a "qualifying trust" under section 11.13 of the Tax Code, only whether the trust instrument satisfies the requirements of a "qualifying trust" under section 41.0021 of the Property Code.

[4] Because only one of the three requirements identified in subsection 41.0021(a)(1) must be satisfied for a living trust to constitute a "qualifying trust" under the Property Code, the Court does not address the other subsections.

The Cyrs' Living Trust contains a "Section 1.06" titled "Homestead Rights Preserved." ECF No. 4-5 at 36. It reads:

> The Trustmakers reserves (sic) the right to use or occupy the Trustmakers' principal residence *rent-free and without charge* after the property is placed in this trust. In addition, our Trustee reserves unto Trustmakers and Trustmakers' assigns, the full possession, benefit, use, rents, revenues, and profits of the property for the remainder of Trustmakers' lives. Trustmakers retain complete power, without the joinder of any person, to mortgage, sell, transfer, assign, and convey the property; to lease and lend the property, including the right to execute and deliver, oil, gas, and mineral leases for any term of years ending either before or after Trustmakers' deaths.

*Id.* (emphasis added).

Appellant argues that the Cyrs' intent to create a living trust that complies with subsection 41.0021(a)(1)(C), and therefore preserves the homestead designation, is clear both from the title "Homestead Rights Reserved" and from the text of the section. Appellee argues the trust instrument is not a "qualifying trust" under subsection 41.0021(a)(1)(C) because it does not specifically state that the Cyrs' may reside at the homestead "at no cost." Additionally, the use of the phrase "rent-free and without charge" demonstrates the Cyrs' intent to create a trust solely for estate planning purposes. Moreover, Mrs. Cyr's testimony that the Living Trust was created as part of their estate tax planning "further suggests the Living Trust was intended to comply with the Tax Code but not necessarily the Property Code." ECF No. 11 at 22.  At oral argument, Appellee agreed that different terms or phrases could be used to express "at no cost." Rough Transcript at 9. A trust instrument that does not include the phrase "at no cost"—but uses another phrase or term that expresses an intent to comply with subsection 41.0021(a)(1)(C)—could constitute a "qualifying trust" under the Property Code. *Id.* at 9-10.

The bankruptcy court's conclusion that a trust instrument must state "at no cost" rests on its distinguishing "rent free and without charge" from "at no cost."

>Under *noscitur a sociis*, the term "charge" should be construed as expenses and costs relating to the payment of rent. Consequently, the phrase "rent-free and without charge" encompasses only rent and expenses and costs related to the payment of rent. Conversely, "cost" is defined as "the amount or equivalent paid or charged for something" and "the outlay or expenditure (as of effort or sacrifice) made to achieve an object." *Cost, Id.* The term "cost" under the No Cost Provision is not limited by any accompanying terms or phrases and should be construed according to its full and fair scope—an amount or equivalent paid or charged for something, regardless of the object being paid for. As such, the phrase "rent free and without charge" under the Tax Code carries a different meaning than the phrase "at no cost" under the Property Code.

*In re Cyr*, 605 B.R. at 805-06.

This Court finds *Sharp v. Park 'n Fly* instructive. 969 S.W.2d 572, 575 (Tex. App.—Austin [3rd Dist.] 1998, pet. denied) (as corrected June 2, 1998). In that case, the court was not persuaded that the terms "charge" and "cost" are distinct. There, the parties disagreed as to whether a sales price was a charge or a cost. The court observed that "[t]he Tax Code does not define 'cost,' but its common definition includes the amount charged for something." *Id.* (citing *Black's Law Dictionary* 345 (6th ed. 1990); *Webster's Third New International Dictionary* 515 (Philip B. Gove ed., 1986) ("charge" as a synonym of "cost")).

Park 'n Fly offered off-site parking and transportation to the airport for a single price. Park 'n Fly asserted that it did not collect sales tax on the portion of the price it allocated to transportation because it was a charge, not a cost. The Tax Code provision there at issue read:

>Except as provided by Subsections (c) and (d) of this section, "sales price" or "receipts" means the total amount for which a taxable item is sold, leased, or rented, valued in money, without a deduction *for the cost of* . . . transportation incident to the performance of a taxable service.

Tax Code § 151.007(a)(4) (emphasis added).

The court opined that finding a distinction between "cost" and "charge" elevated form over substance. In other words, whether the statute read "for the cost of" or "charged for" was irrelevant. What mattered was whether the transportation was incident to the performance of a

taxable service. Whether the price allocated to transportation was termed a "cost" or a "charge" was not controlling. *Park 'n Fly*, 969 S.W.2d at 575. A similar conclusion is appropriate here.

**Conclusion**

The cornerstone of the bankruptcy court's order is that under the Property Code, a trust instrument must include the phrase "at no cost" to preserve the homestead designation. This Court disagrees. Section 41.0021 does not require the phrase "at no cost" be included for a trust instrument to constitute a "qualifying trust." Requiring a trust instrument to include the phrase "at no cost" elevates form over substance. What matters is whether the trust instrument expresses intent to preserve the homestead designation. This interpretation is consistent with the statute's purpose: to allow a trustee to transfer a homestead into a living trust without affecting the homestead designation of the property, thereby continuing the residence homestead protection. *See* ECF No. 10 at 29 (Bill Analysis, H.B. 3767).

The Cyrs' Living Trust expresses intent to preserve the homestead designation. Thus, the Living Trust is a "qualifying trust" under the Property Code. The bankruptcy court erred when it concluded the Cyrs' Living Trust does not constitute a "qualifying trust" under subsection 41.0021(a)(1)(C) of the Tex. Prop. Code. Accordingly, this Court reverses the order of the bankruptcy court sustaining SNH's objection.

IT IS THEREFORE ORDERED the order of the Bankruptcy Court is REVERSED and the Court RENDERS judgment for Appellants. The Living Trust is a "qualifying trust" under the Property Code and therefore, when 15 Esquire was transferred to the Living Trust, 15 Esquire did not lose its homestead exemption protections.

SIGNED this 30th day of November 2020.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE